J-S25015-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

IN THE INTEREST OF: K.L.E.

APPEAL OF: S.H., NATURAL MOTHER

IN THE SUPERIOR COURT OF PENNSYLVANIA

No. 2044 WDA 2014

Appeal from the Order November 13, 2014
In the Court of Common Pleas of Lawrence County
Orphans' Court at No(s): 20066 OF 2013 O.C.A.

BEFORE: BENDER, P.J.E., STABILE, J., and PLATT, J.*

MEMORANDUM BY BENDER, P.J.E.:                    **FILED JULY 14, 2015**

Appellant, S.H., ("Mother") appeals from the order entered on November 13, 2014, that granted the petition to involuntarily terminate her parental rights to her minor, female child, K.L.E. ("Child") (born in October of 2000), filed by B.E., Child's paternal grandmother ("Paternal Grandmother"), pursuant to section 2511(a)(1) and (b) of the Adoption Act, 23 Pa.C.S. § 2511(a)(1) and (b).[1]  We affirm.

The relevant facts and procedural history of this case are as follows. Mother and Father were never married.  After Child was born, Mother and Father resided together with Child, moving from Volant, Pennsylvania to an apartment in Neshannock Township, Pennsylvania.  Within five months of Child's birth, Mother and Father moved into Paternal Grandmother's

_____

* Retired Senior Judge assigned to the Superior Court.
[1] On September 12, 2013, D.E. ("Father") passed away.  Father is not a party to the current appeal, nor did he file a separate appeal.

residence in New Castle, Pennsylvania. When Child was approximately two years old, Mother left Paternal Grandmother's residence. Father and Child remained at Paternal Grandmother's residence. Paternal Grandmother assumed the role of Child's primary caregiver due to Father's drug and alcohol problems.

In 2003, Father initiated a custody action against Mother. Father was awarded primary physical custody of Child. Mother's custodial rights to Child were suspended in February of 2004, because Mother did not appear for a review conciliation conference. During this time, Mother moved to Ohio, where she currently lives with her fiancé and her two sons.

From February 2004 through December 2012, Mother had no contact with Child. In December of 2012, Child and Mother met briefly at a local McDonald's with Father supervising the visit. After the December 2012 visit at McDonald's, Mother saw Child approximately three times in Father's presence.

On September 12, 2013, Father died at the age of thirty-seven, and Child remained in Paternal Grandmother's care. Mother last saw Child at Child's birthday party on October 29, 2013, which was held at the residence of Child's maternal grandmother ("Maternal Grandmother") without Paternal Grandmother's knowledge or permission. Paternal Grandmother became aware of the birthday party for Child when her sister-in-law admitted that

she drove Child to the birthday party while Paternal Grandmother was at work.

On December 4, 2013, Paternal Grandmother filed a petition to involuntarily terminate Mother's parental rights to Child. On February 18, 2014, May 23, 2014, and August 28, 2014, the trial court held hearings on the termination petition. On February 18, 2014, the same day the termination hearing commenced, Mother filed preliminary objections challenging Paternal Grandmother's standing pursuant to Rule 1028(5) of the Pennsylvania Rules of Civil Procedure.[2] At the August 28, 2014 hearing, counsel for Mother made an oral motion to dismiss for the trial court's failure to promptly dispose of the preliminary objections. The trial court denied the motion to dismiss that same day, and reserved ruling on Mother's preliminary objections until after the termination proceedings concluded. At the hearings, the trial court heard the testimony of Joanne Nene, Esq., court-appointed guardian *ad litem*; K.W., Child's paternal aunt ("Paternal Aunt"); T.H., Child's maternal aunt ("Maternal Aunt"); T.W., Maternal Aunt's ex-boyfriend; P.A., Child's paternal great-aunt; E.M., Child's paternal half-sister; K.C., Child's paternal great-aunt; Mother; and Paternal Grandmother. After the close of the testimony, the trial court conducted an *in camera* interview with Child, in the presence of counsel. Then, by the order entered

_____

[2] ***See also*** Pa.R.C.P. 1915.5(a) ("Question of Jurisdiction, Venue or Standing").

on November 13, 2014, which is the subject of this appeal, the trial court overruled Mother's preliminary objections and terminated Mother's parental rights to Child pursuant to 23 Pa.C.S. § 2511(a)(1) and (b).

On December 12, 2014, Mother filed a notice of appeal, along with a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).  Mother raises three issues, as follows.

1. Did the [trial] court err when it found that … [Paternal Grandmother established] the grounds for termination by clear and convincing evidence, since the [trial] court did not consider the totality of the circumstances in its Opinion?

2. Did the [trial] court err by concluding that … [P]aternal [G]randmother … [produced] … clear and convincing evidence that … [M]other, by conduct continuing for a period of at least six months immediately preceding the filing of the petition, … either evidenced a settled purpose of relinquishing parental claims to [Child] or refused or failed to perform her parental duties?

3. Did the [trial] court err in determining that … [Paternal Grandmother proved] by clear and convincing evidence that it is in the best interest of the [C]hild that … [M]other's rights be terminated?

Mother's Brief, at 3.

Our standard of review regarding orders terminating parental rights is as follows:

> When reviewing an appeal from a decree terminating parental rights, we are limited to determining whether the decision of the trial court is supported by competent evidence.  Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. Where a trial court has granted a petition to involuntarily terminate parental rights, this Court must accord the hearing judge's decision the same deference that we would give to a

- 4 -

jury verdict. We must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence.

*In re S.H.*, 879 A.2d 802, 805 (Pa. Super. 2005). In termination cases, the burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. *Id.* at 806. We have previously stated:

> The standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue."

*In re J.L.C. & J.R.C.*, 837 A.2d 1247, 1251 (Pa. Super. 2003).

The trial court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence. *In re M.G.*, 855 A.2d 68, 73-74 (Pa. Super. 2004). If competent evidence supports the trial court's findings, we will affirm even if the record could also support the opposite result. *In re Adoption of T.B.B.,* 835 A.2d 387, 394 (Pa. Super. 2003).

In terminating Mother's parental rights, the trial court relied upon Section 2511(a)(1) and (b) which provide:

**§ 2511. Grounds for involuntary termination**

**(a) General rule.**--The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

> (1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of

relinquishing parental claim to a child or has refused or failed to perform parental duties.

* * *

(b) Other considerations.--The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511.

We have explained this Court's review of a challenge to the sufficiency of the evidence to support the involuntary termination of a parent's rights pursuant to section 2511(a)(1) as follows:

To satisfy the requirements of section 2511(a)(1), the moving party must produce clear and convincing evidence of conduct, sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties. In addition,

Section 2511 does not require that the parent demonstrate both a settled purpose of relinquishing parental claim to a child and refusal or failure to perform parental duties. Accordingly, parental rights may be terminated pursuant to [s]ection 2511(a)(1) if the parent either demonstrates a settled purpose of relinquishing parental claim to a child or fails to perform parental duties.

Once the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights, the court must engage in three lines of

inquiry: (1) the parent's explanation for his or her conduct; (2) the post-abandonment contact between parent and child; and (3) consideration of the effect of termination of parental rights on the child pursuant to [s]ection 2511(b).

*In re Z.S.W.*, 946 A.2d 726, 730 (Pa. Super. 2008) (internal citations omitted).

Regarding the definition of "parental duties," this Court has stated:

There is no simple or easy definition of parental duties. Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, this Court has held that the parental obligation is a positive duty which requires affirmative performance.

This affirmative duty encompasses more than a financial obligation; it requires continuing interest in the child and a genuine effort to maintain communication and association with the child.

Because a child needs more than a benefactor, parental duty requires that a parent exert himself to take and maintain a place of importance in the child's life.

Parental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances. A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with . . . her physical and emotional needs.

*In re B., N.M.*, 856 A.2d 847, 855 (Pa. Super. 2004), *appeal denied*, 582

Pa. 718, 872 A.2d 1200 (2005) (internal citations omitted).

- 7 -

We will address Mother's first two issues simultaneously since they are related. Mother argues that the trial court erred by concluding that Paternal Grandmother produced clear and convincing evidence of Mother's conduct, sustained for at least six months immediately preceding the filing of the petition, which evidenced a settled purpose to relinquish her parental claim to Child or refusal or failure to perform her parental duties. Mother's Brief, at 17. Mother contends the trial court based its decision on the determination that Mother had limited contact with Child prior to Father's death, and that she made no attempts to contact Child following Father's death on September 12, 2013 until the filing of the instant petition. *Id.* at 19. Mother further claims that the trial court did not consider the totality of the circumstances that Mother exerted a sincere and genuine effort to maintain a parent relationship with Child, and Paternal Grandmother prevented Mother from maintaining a relationship with Child. *Id.* at 14-16.

The trial court determined that Child has lived with Paternal Grandmother since she was approximately two years old, when Mother left Child in the care of Father and Paternal Grandmother, and that Mother took no responsibility for Child's care. Trial Court Opinion, 11/13/14, at 10. After Mother left, Paternal Grandmother assumed the role of Child's primary caregiver due to Father's drug and alcohol problems. N.T., 2/18/14, at 30-31.

In 2003, Father was awarded primary custody. Mother's custodial rights were suspended in February of 2004. Thereafter, Mother made no effort to reinstate her custodial rights. N.T., 8/28/14, at 153. From February 2004 to December 2012, Mother admitted that she had no contact with Child. *Id.* at 116. In December of 2012, Child and Mother met at a local McDonald's with Father supervising the visit. Mother stated that she maintained telephonic communication with Child from early 2013 up until Father's death. *Id.* at 93. However, Child testified that she only remembered speaking with Mother on the telephone four times after their initial visit in December of 2012, and one of the four phone calls was Mother asking her how she was after Father died. *Id.* at 188. From the testimony offered, the trial court believed that Mother met with Child and Father approximately three times following the initial visit at McDonald's in December of 2012. Trial Court Opinion, 11/13/14, at 5. While Mother offered her own testimony and the testimony of several family members and friends to substantiate her claim that Child does in fact have a relationship with Mother, the trial court determined that their testimony only established that Child had on occasion visited with her maternal family and enjoyed these visits. *Id.* at 5-6. As such, the trial court was unconvinced that the limited contact Mother exerted prior to Father's death established that Mother was an active parental figure in Child's life. *Id.* at 15. The trial court also noted that Mother failed to provide any sort of financial support to

Child. Although this fact alone is not conclusive, it, along with all the other shortcomings exhibited by Mother, clearly establishes a failure to perform parental duties. *Id.* at 16.

The trial court determined that Paternal Grandmother became the sole caretaker of Child after Father passed away on September 12, 2013. *Id.* at 10. Mother testified that she did not speak with Child following Father's death. N.T., 8/28/14, at 92, 188. Based on Mother's testimony, the trial court concluded that Mother failed to contact Child "following Father's death on September 12, 2013, throughout the filing of the instant termination petition, a period of almost three months." Trial Court Opinion, 11/13/14, at 5, 15. We defer to the trial court's determination of credibility, absent an abuse of discretion, and discern no such abuse in its finding credible the testimony of Mother. *See In re Adoption of S.P.*, 47 A.3d at 826-27.

Mother also argues that Paternal Grandmother hindered her relationship with Child. After Father passed away, Mother last saw Child on October 29, 2013 at Child's birthday party at Maternal Grandmother's residence. N.T., 8/28/14, at 92. The record demonstrates that Mother planned Child's birthday party without Paternal Grandmother's permission or knowledge. N.T., 2/18/14, at 42-44. Mother employed Paternal Grandmother's sister-in-law to help her with the party arrangements and to assist Mother in undermining Paternal Grandmother's authority as Child's caretaker. N.T., 8/28/14, at 92-93. Additionally, Child was instructed not to

tell Paternal Grandmother about the birthday party or the birthday gifts she received, which included the cellphone Mother bought her so they could maintain contact with each other. N.T., 8/28/14, at 194-195. Paternal Grandmother found out about the birthday party Mother organized for Child, when her sister-in-law admitted she drove Child to the birthday party. N.T., 2/18/14, at 59-60. Consequently, Mother has not seen Child since Child's birthday party on October 29, 2013, because Paternal Grandmother decided not to permit visitation until after they settle the custody arrangements for Child in court. *Id.* at 63; N.T., 8/28/14, at 143. The trial court did not find Paternal Grandmother's actions controlling or overbearing, concluding that she was being protective of Child. Trial Court Opinion, 11/13/14, at 17. As such, the trial court found no merit in Mother's argument that Paternal Grandmother hindered Mother's relationship with Child. *Id.*

After our careful review of the record in this matter, we determine that the trial court's credibility and weight determinations are supported by competent evidence in the record. *In re Adoption of S.P.*, 47 A.3d at 826-827. Mother left Child with Paternal Grandmother and Father when Child was approximately two. Mother failed to provide educational, psychological, emotional or financial support. Mother had absolutely no contact with Child from February 2004 to December 2012, nearly nine years. From December of 2012 until the filing of the instant termination petition, Mother's limited and inconsistent involvement in Child's life, *i.e.*, five visits and four phone

calls, fails to prove she reestablished her relationship with Child and/or performed parental duties on Child's behalf. Contrary to Mother's assertion, she did not fulfill her role as a parent by planning one birthday party for Child and giving Child a few presents because the law is clear that a child needs more than just a benefactor. *In re B., N.M.*, 856 A.2d at 855. Based on the record, it is clear that Mother sat idle for most of Child's life, allowing Paternal Grandmother to perform all parental duties. Thus, the trial court did not err in terminating Mother's parental rights to Child pursuant to section 2511(a)(1).

We next recognize that the trial court must also consider how termination affects the needs and welfare of the child pursuant to 23 Pa.C.S. § 2511(b). Under section 2511(b), the trial court's inquiry is specifically directed to whether termination would best serve the developmental, physical and emotional needs of the child. *See In re C.M.S.*, 884 A.2d 1284, 1286-87 (Pa. Super. 2005), *appeal denied*, 587 Pa. 705, 897 A.2d 1183 (2006). "Intangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." *Id.* at 1287 (citation omitted). We have instructed that the trial court must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond. *See id*.

The trial court determined that Paternal Grandmother presented clear and convincing evidence that it is in the best interest of Child that Mother's

rights be terminated. During the termination proceedings, Attorney Nene, the court-appointed guardian *ad litem*, testified that Child has been very adamant about wanting to be adopted by Paternal Grandmother. N.T., 5/23/14, at 14. Attorney Nene stated that Child does not have any recollections of Mother caring for her, only Paternal Grandmother. ***Id.*** at 16-17. Attorney Nene testified that Child would still like to see Mother, and do fun, girly things with Mother like go to the movies and get manicures. ***Id.*** According to Attorney Nene, Paternal Grandmother told her that she would permit Mother to see Child once everything was settled and she knew no one could take Child away from her. ***Id.*** at 18. Attorney Nene opined that based on Child's need for consistency, permanency, and stability, a custody order awarding Paternal Grandmother primary custody with Mother having visitations would not be in Child's best interest because custody orders are never final. N.T., 8/28/14, at 167-168. Attorney Nene testified that it was her recommendation that Mother's parental rights be terminated, and Paternal Grandmother should adopt Child because Paternal Grandmother has Child's best interest in mind. ***Id.*** at 167-168; N.T., 5/23/14, at 59-60. The trial court found Attorney Nene's testimony to be credible. Thus, we will not disturb the trial court's determinations. ***See In re M.G.***, 855 A.2d at 73-74.

The trial court found that the evidence establishes that Paternal Grandmother has been the primary caregiver for Child since Mother left

Paternal Grandmother's residence. Trial Court Opinion, 11/13/14, at 16. The trial court determined that Paternal Grandmother has a normal and healthy relationship with Child, and Paternal Grandmother has been the sole source of emotional support for Child following Father's death. *Id.* The trial court found that Child expressed a desire to Attorney Nene to remain with Paternal Grandmother. *Id.* at 17. The trial court further found that Child bonded with Paternal Grandmother, and that Child's main source of love, comfort, stability, and security is Paternal Grandmother, not Mother.

Our review of the record reveals that it is clear from the trial court's accompanying memorandum that termination of Mother's parental rights is in the best interest of Child, and that no evidence of a bond exists between Mother and Child. We have stated, "In cases where there is no evidence of any bond between the parent and child, it is reasonable to infer that no bond exists." *In re K.Z.S.*, 946 A.2d 753, 763 (Pa. Super. 2008). With respect to the bond analysis pursuant to section 2511(b), our Supreme Court confirmed that, "the mere existence of a bond or attachment of a child to a parent will not necessarily result in the denial of a termination petition." *In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013).

The trial court also considered the testimony of Mother and several of Mother's family members and friends, but concluded that it is not determinative of Child's relationship with Mother or any parental bond that may or may not exist. N.T., 2/21/14, at 6. We defer to a trial court's

- 14 -

determination of credibility, absent an abuse of discretion, and discern no such abuse in its finding that testimony of Paternal Grandmother and Attorney Nene were credible. *See In re M.G.*, 855 A.2d at 73-74.

While Mother professes that she loves Child and wants to maintain a relationship with Child, this Court has held that a parent's love of her child, alone, does not preclude a termination. *See In re L.M.*, 923 A.2d 505, 512 (Pa. Super. 2007) (stating that a parent's own feelings of love and affection for a child, alone, will not preclude termination of parental rights).

After this Court's careful review of the record, we find that the competent evidence in the record supports the trial court's determination that the termination of Mother's parental rights is in Child's best interests. Accordingly, we affirm the order terminating Mother's parental rights to Child on the basis of section 2511(a)(1) and (b).

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 7/14/2015